# EXHIBIT

# 2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| ABIGAIL NOEL FISHER and | § | |
| RACHEL MULTER MICHALEWICZ, | § | |
| *Plaintiffs*, | § | |
| | § | **CIVIL ACTION NO. 1:08-CV-00263-SS** |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN; *et al.* | § | |
| *Defendants.* | § | |

## UT AUSTIN'S RESPONSE TO PLAINTIFFS' SECOND DISCOVERY REQUESTS

TO:     Plaintiffs, Abigail Noel Fisher and Rachel Multer Michalewicz, by and through their attorney
of record, Paul M. Terrill III, The Terrill Firm, P.C., 810 West 10th Street, Austin TX 78701

Defendant the University of Texas at Austin ("UT Austin") responds to Plaintiffs' Second

Discovery Requests (the "Requests") as follows (the "Responses"):

### GENERAL OBJECTIONS

UT Austin makes the following general objections to Plaintiffs' Requests, which are

incorporated by reference into each Response.

1.  UT Austin objects to the Requests to the extent that they request information protected by the

    attorney-client or work product privilege.

2.  UT Austin objects to the Requests to the extent they request information protected by the

    Family Educational Rights and Privacy Act ("FERPA").

*UT Austin's Response to Plaintiffs' Second Discovery Requests*

## RESPONSES

**Request for Admission Number 1:**

Please admit that UT Austin issued written instructions, guidances or any other document, however denominated, that instructed, advised or assisted "readers" acting on behalf of UT Austin in reviewing applications and in determining the PAI scores of applicants for undergraduate admission to the incoming freshman class (fall and/or summer classes) of UT Austin in the year 2008.

**Response to Request for Admission Number 1:**

Admit, and state that documents were provided to readers in connection with training classes and that no reader may participate in the admissions process unless that reader has attended training for that year.

**Interrogatory Number 7:**

If the Answer to REQUEST FOR ADMISSION NUMBER 1 is affirmative, identify each and every document on which your response is based. If your answer to REQUEsST FOR ADMISSION NUMBER 1 is negative, explain how "readers" acting on behalf of UT Austin for the purposes described in REQUEST FOR ADMISSION NUMBER 1 were instructed, advised or assisted in reviewing applications and in determining the PAI scores of applicants for undergraduate admission to the incoming freshman class (fall and/or summer classes) of UT Austin in the year 2008.

**Response to Interrogatory No. 7:**

UT Austin objects to this Interrogatory as overburdensome. UT Austin further objects to his Interrogatory to the extent that the information is publicly available on UT Austin's website and, thus, fully available to Plaintiffs. Subject to and without waiving these or its general objections, UT

*UT Austin's Response to Plaintiffs' Second Discovery Requests*                                        2

Austin states *see* documents produced in response to Request for Production Number 1, the websites

disclosed in Defendants' Rule 26(a) disclosures, and the following websites:

http://registrar.utexas.edu/catalogs/gi07-08/ch02/index.html

http://bealonghorn.utexas.edu/freshmen/admission/index.html

http://bealonghorn.utexas.edu/freshmen/admission admission /factors/index.html

**Request for Production Number 1:**

Please produce all documents relating to Defendant's responses to REQUEST FOR ADMISSION

NUMBER 1 and INTERROGATORY NUMBER 7.

**Response to Request for Production Number 1:**

UT Austin objects to this Request to the extent it seeks information protected by FERPA.

Subject to and without waiving this and its General Objections, *see* redacted documents Bates

labeled D-143 through D-617.

**Request for Admission Number 2:**

Please admit that UT Austin established a goal, target or any other quantitative objective, however

denominated, for the admission and/or enrollment of minority students for any of the incoming

freshman classes to be admitted in 2008, 2007, 2006, 2005, 2004 and 2003.

**Response to Request for Admission Number 2:**

Deny.

**Interrogatory Number 8:**

If the answer to REQUEST FOR ADMISSION NUMBER 2 is affirmative, state that goal, target or

quantitative objective for the years 2008, 2007, 2006, 2005, 2004 and 2003 (as applicable), and

identify each and every document that refers or relates to determination of that goal, target or quantitative objective. Please include in your response a statement about whether such goal, target or objective included separate goals for (a) Hispanic students; (b) African-American students; and (c) Asian-American students.

**Response to Interrogatory No. 8:**

Because Request for Admission Number 2 is denied, UT Austin states that no response to this Interrogatory is required.

**Request for Production Number 2:**

Please produce all documents relating to Defendant's responses to REQUEST FOR ADMISSION NUMBER 2 and INTERROGATORY NUMBER 8.

**Response to Request for Production Number 2:**

Subject to and without waiving its General Objections, UT Austin states that it has no documents responsive to this Request

**Request for Admission Number 3:**

Please admit that UT Austin determined the number or range of numbers (by percentage or otherwise) of minority students necessary to create a "critical mass" of minority students for the incoming freshman class to be admitted in the fall and/or summer of 2008.

**Response to Request for Admission Number 3:**

Deny.

**Interrogatory Number 9:**

If the answer to REQUEST FOR ADMISSION NUMBER 3 is affirmative, state the number or range of numbers (by percentage or otherwise) identified as "critical mass" of minority students as determined for the years 2008, 2007, 2006, 2005, 2004 an 2003, and identify each and every document that refers or relates to the determination of that "critical mass." Please include in your response a statement about whether such number or range of numbers is a composite of separate goals for (a) Hispanic students; (b) African-American students; and (c) Asian-American students.

**Response to Interrogatory No. 9:**

Because Request for Admission Number 3 is denied, UT Austin states that no response to this Interrogatory is required.

**Request for Production Number 3:**

Please produce all documents relating to Defendant's responses to REQUEST FOR ADMISSION NUMBER 3 and INTERROGATORY NUMBER 9.

**Response to Request for Production Number 3:**

Subject to and without waiving its General Objections, UT Austin states that it has no documents responsive to this Request.

**Request for Admission Number 4:**

Please admit that an applicant's race played a role in the evaluation of the essays constituting elements of the PAI scores used by UT Austin in evaluating applications for the incoming freshman classes to be admitted in the fall or summer of 2008, 2007, 2006, 2005, 2004 and 2003.

**Response to Request for Admission Number 4:**

Deny.

**Interrogatory Number 10:**

If the answer to REQUEST FOR ADMISSION NUMBER 4 is affirmative, describe how race was

employed in each such evaluation and identify each and every document that refers or relates to the

process or technique by which race was employed in such determination.

**Response to Interrogatory No. 10:**

Because Request for Admission Number 4 is denied, UT Austin states that no response to

this Interrogatory is required. To the extent that a response is required, subject to its general

objections, UT Austin states *see* documents produced in response to Request for Production Number

1, the websites disclosed in Defendants' Rule 26(a) disclosures, and the following websites:

http://registrar.utexas.edu/catalogs/gi07-08/ch02/index.html

http://bealonghorn.utexas.edu/freshmen/admission/index.html

http://bealonghorn.utexas.edu/freshmen/admission admission /factors/index.html

**Request for Production Number 4:**

Please produce all documents relating to Defendant's responses to REQUEST FOR ADMISSION

NUMBER 4 and INTERROGATORY NUMBER 10.

**Response to Request for Production Number 4:**

Subject to and without waiving its General Objections *see* documents produced in response

to Request for Production Number 1, the websites disclosed in Defendants' Rule 26(a) disclosures,

and the following websites:

*UT Austin's Response to Plaintiffs' Second Discovery Requests*                                    6

http://registrar.utexas.edu/catalogs/gi07-08/ch02/index.html

http://bealonghorn.utexas.edu/freshmen/admission/index.html

http://bealonghorn.utexas.edu/freshmen/admission admission /factors/index.html

**Request for Admission Number 5:**

Please admit that a rank ordered list or similar record of any kind (AI or PAI or AI/PAI combined) was used to compare applicants for the incoming freshman class to be admitted for the fall or summer of 2008.

**Response to Request for Admission Number 5:**

Admit in part and deny in part. Although UT Austin did not keep a rank ordered "list" of applicants, it did use a matrix that grouped students, identified only by applicant IDs, with the same AI and PAI into "cells," and each student in that cell was treated the same with respect to admission decisions prior to the second read process.

**Interrogatory Number 11:**

If the REQUEST FOR ADMISSION NUMBER 5 is affirmative, identify each and every document which constitutes, refers or relates to such rank-ordered list and state whether the race of any applicant was denominated on such list. If the answer to REQUEST FOR ADMISSION NUMBER 5 is negative, describe the process by which "senior readers" selected the non-top 10 students to be selected for the class to be admitted in the fall or summer of 2008 including (a) the means of determining the number of non-top 10 places available for the class to be admitted in the fall or summer of 2008; (b) the means of determining the number of (i) Hispanic students; (ii) African-American students; and Asian-American students admitted as top-10 applicants for the fall of 2008;

*UT Austin's Response to Plaintiffs' Second Discovery Requests*                    7

(c) the means by which "senior readers" were advised of the information described in (b); and (d) the process by which "senior readers" agreed on the applicants to be offered admission to the incoming freshman class (fall or summer class) to be admitted in 2008.

**Response to Interrogatory No. 11:**

UT Austin objects to this Interrogatory because it contains many discrete subparts and, thus, constitutes more than one interrogatory under Federal Rule of Civil Procedure 33(a). Subject to and without waiving this or its General Objections, UT Austin states as responsive to five (5) Interrogatories and counting toward Plaintiffs' limit:

See documents produced in response to Request for Production No. 5.

1. **Describe the process by which "senior readers" selected the non-top 10 students to be selected for the class to be admitted in the fall or summer of 2008:** If a resident applicant is not admitted for the fall semester but falls in a cell on their matrix grid close to applicants who were admitted, the applicant's file is re-read by a senior reader. Based on that second reading, the reader decides whether to admit the applicant to the fall semester, to the summer semester, or through the Coordinated Admission Program ("CAP"). In reaching their decision, readers rely on training and experience, both long term and that gained from familiarity with the files previously reviewed along other parts of the admissions process. Senior readers generally do not select non-Top 10 students to be admitted in the fall in this second read process. However, in some cases at the time of the re-read process some students selected during the process may be granted fall admission.

*UT Austin's Response to Plaintiffs' Second Discovery Requests*

2. **Describe the means of determining the number of non-top 10 places available for the class to be admitted in the fall or summer of 2008:** Throughout the admissions an administrative program calculates a headcount of the number of applicants, admits, and deposits paid, including a breakdown of Top 10 applicants admits and deposits. This headcount is used in the admissions process to determine how many spaces remain for non-Top 10 applicants.

3. **Describe the means of determining the number of (i) Hispanic students; (ii) African-American students; and (iii) Asian-American students admitted as top-10 applicants for the fall of 2008:** There is no determination of how many Top 10 applicants to admit as under the law all Top 10 applicants are offered admission to the fall semester. The race or ethnicity of all Top 10 students who are admitted is known via the headcount system, which reports the results of the automatic Top 10 admissions process.

4. **Describe the means by which "senior readers" were advised of the information described in (b) [#3 in this Response]:** Senior readers are not "advised" in their role as senior readers of the number of Hispanic, African-American, or Asian-American students that were admitted as Top 10 students. As previously noted, the race or ethnicity of Top 10 admits is information that is available to any Admissions office staffer. Senior readers do not, however, take such information into account as part of the re-read process.

5. **Describe the process by which "senior readers" agreed on the applicants to be offered admission to the incoming freshman class (fall or summer class) to be admitted in 2008:** A senior reader reads an application file as part of the summer re-

read process and may or may not consult with other senior readers as part of making a determination whether to admit the student or not.

**Request for Production Number 5:**

Please produce all documents relating to Defendant's responses to REQUEST FOR ADMISSION NUMBER 5 and INTERROGATORY NUMBER 11.

**Response to Request for Production Number 5:**

Subject to and without waiving its General Objections, UT Austin is producing both "working" and "final" documents, matrices and supporting records. *See* documents Bates labeled D-618 through D-925.

**Interrogatory Number 12:**

Identify the person or persons at UT Austin having final authority for selecting/rejecting non-top 10 applicants to be offered admission to the incoming freshman class (fall or summer class) to be admitted in 2008.

**Response to Interrogatory No. 12:**

Bruce Walker.

**Request for Admission Number 6:**

Please admit that UT Austin has a projected end date by which it intends to cease using race as a factor in undergraduate admissions decisions.

**Response to Request for Admission Number 6:**

Deny.

**Interrogatory Number 13:**

If the answer to REQUEST FOR ADMISSION NUMBER 6 is affirmative, please state the projected end date by which UT Austin intends to cease using race as a factor in undergraduate admissions decisions.

**Response to Interrogatory No. 13:**

Because Request for Admission Number 6 is denied, UT Austin states that no response to this Interrogatory is required.

**Request for Production Number 6:**

Please produce all documents relating to Defendant's responses to REQUEST FOR ADMISSION NUMBER 6 and INTERROGATORY NUMBER 13.

**Response to Request for Production Number 6:**

Subject to and without waiving its General Objections, UT Austin states that it has no documents responsive to this Request.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Litigation

JAMES C. HO
Solicitor General

ROBERT B. O'KEEFE
Chief, General Litigation Division

*UT Austin's Response to Plaintiffs' Second Discovery Requests*

11

RYAN CLINTON
Assistant Solicitor General

*Mishell B. Kneeland*

MISHELL B. KNEELAND
Texas Bar No. 24038256
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
mishell.kneeland@oag.state.tx.us
512-463-2120
512-320-0667 *fax*
*ATTORNEYS FOR DEFENDANTS*

STATE OF TEXAS        §
TRAVIS COUNTY     §

## **VERIFICATION**

On this day, **KEDRA ISHOP** appeared before me, the undersigned notary public.  After I administered an oath to her, she said that she had read UT Austin's Responses to Plaintiffs' Interrogatories 7 through 13, and that the facts stated in them are within her personal knowledge and are true and correct.

**KEDRA ISHOP**

SWORN TO and SUBSCRIBED before me by **KEDRA ISHOP** on August 19 , 2008.

Notary Public in and for
the State of Texas

LEEA C MECHLING
NOTARY PUBLIC
State of Texas
Comm. Exp. 08-26-2011

*UT Austin's Response to Plaintiffs' Second Discovery Requests*

13

## CERTIFICATE OF SERVICE

I certify that a copy of foregoing document has been sent by First Class U.S. Mail and e-mail on this the **20th day of August, 2008** to the following individuals at the listed addresses:

**Bert W. Rein**
**Thomas R. McCarthy**
**Suzette Rodriguez Hurley**
**David C. Rybicki**
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
brein@wileyrein.com
tmccarthy@wileyrein.com
shurley@wileyrein.com
drybicki@wileyrein.com

I further certify that the Bates labeled documents referenced in the foregoing documents were sent by First Class U.S. Mail on this the **20th day of August, 2008**, to the following individuals at the listed addresses:

**Paul M. Terrill**
The Terrill Firm, PC
810 West 10th Street
Austin, TX 78701
pterrill@terrill-law.com

**Mishell B. Kneeland**
Assistant Attorney General

*UT Austin's Response to Plaintiffs' Second Discovery Requests*